**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ANTHONY SULLIVAN**,

    **Petitioner**,

    **v.**                     **CASE NO.  2:15-cv-2585**

**WARDEN, WARREN**             **JUDGE MICHAEL H. WATSON**
**CORRECTIONAL INSTITUTION**,

                              **Magistrate Judge Kemp**

    **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the Petition (Doc. 1) and the Response (Doc. 6).  For the reasons that follow, it will be recommended that the Court deny the petition and dismiss this action.

### I.  Procedural Background

In an indictment filed on December 3, 2009, the Franklin County, Ohio grand jury charged Petitioner with a total of four felony counts, two of robbery with a repeat violent offender (RVO) specification and two of robbery, all arising out of two bank robberies which took place in Columbus, Ohio, in November, 2009.  Petitioner was accused of robbing the same branch of the Cooper State Bank on November 6, 2009, and again on November 11, 2009.  *Response,* Ex. 1.

Petitioner pleaded not guilty and filed numerous pretrial motions, all of which were denied.  The case was tried to a jury beginning on July 19, 2010.  Three days later, the jury

returned a verdict of guilty on counts one and three of the indictment, which were the

robbery with specification charges; counts two and four were dismissed.  In an entry filed

on September 20, 2010, the trial court sentenced Petitioner to 26 years of imprisonment.

*Response*, Ex. 15.

Petitioner timely appealed, raising eleven separate assignments of error, including

several claims of ineffective assistance of trial counsel.   In an opinion filed on December

13, 2011, the Tenth District Court of Appeals overruled all of Petitioner's assignments of

error.  *State v. Sullivan*, 2011 WL 6202357 (Franklin Co. App. Dec. 13, 2011).   Petitioner

appealed this decision to the Ohio Supreme Court.  In his memorandum in support of

jurisdiction (*Return*, Ex. 22), he presented only three issues:

> Proposition of Law No. 1: Ohio's Repeat Violent Offender statute is
> unconstitutionally vague and consequently void.

> Proposition of Law No. 2: A violation of the Sixth and Fourteenth
> Amendments to the Ohio and U.S. Constitutions occur when police enter a
> motel room and search the baggage of a guest who does not consent to such
> search.

> Proposition of Law No. 3: A violation of the Fifth and Fourteenth
> Amendments to the Ohio and U.S. Constitutions occur when police construct
> a photo array inclusive of bald-headed men where the suspect is not bald.

On April 18, 2012, the Ohio Supreme Court declined to accept Petitioner's timely appeal.

*State v. Sullivan*, 131 Ohio St.3d 1510 (Apr. 18,  2012).

On February 8, 2013, Petitioner moved to reopen his appeal pursuant to Appellate

Rule 26(B), citing several instances where he believed his appellate counsel to have been

ineffective.  *Response*, Ex. 25.   The state opposed the motion on timeliness grounds (it was filed almost a year late), and the court of appeals agreed, denying the motion on April 16, 2013, along with a second motion for reopening that Petitioner had filed on March 12, 2013. *Response*, Ex. 30.  The Ohio Supreme Court declined to hear Petitioner's appeal from that decision.  *State v. Sullivan*, 136 Ohio St.3d 1453 (July 24, 2013).

While Petitioner's appeal was pending, he filed a post-conviction petition in the Franklin County Court of Common Pleas.  He moved multiple times to amend that petition to add claims not originally asserted.  On September 11, 2013, the trial court denied his petition and all of his subsequent motions.  *Response*, Ex. 50.  Petitioner timely appealed, raising four issues: that the trial court lacked jurisdiction to sentence him beyond the statutory maximum, that the State improperly withheld exculpatory evidence, that his counsel was ineffective for failing to subpoena one of the robbery victims, and that the trial court should have held a hearing on his petition.  In a decision rendered on March 27, 2014, the Tenth District Court of Appeals found no merit in his claims and affirmed the trial court's judgment.  *State v. Sullivan*, 2014 WL 1347100 (Franklin Co. App. March 27, 2014). Petitioner's timely appeal to the Ohio Supreme Court was unsuccessful as well.  *See State v. Sullivan*, 139 Ohio St.3d 1473 (July 9, 2014).

In his federal habeas corpus petition, which Petitioner signed on July 2, 2015, Petitioner raises these four grounds for relief, stated exactly as they appear in the Petition:

> **GROUND ONE**: Plaintiff's 10 yr. Mandatory sentence in RVO spec time is contrary to federal law and therefore illegal and must be corrected.

**GROUND TWO**: Plaintiff was deprived effective assistance of counsel, failing to request a jury instruction on O.R.C. 2913.02(A)(4) theft by threat.

**GROUND THREE**: The trial court erred in not instructing the jury on the sufficiency of the evidence of force.

**GROUND FOUR**: Trial court erred when it allowed hearsay testimony, offending the U.S.C.

Respondent argues that grounds one through three were procedurally defaulted and that ground four is without merit.  Petitioner has not filed a reply in support of his petition and did not address procedural default in the petition itself.

## II.  Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982 (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...."  *Coleman v. Thompson*, 501 U.S. 722,

735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and

that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).

Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice'

standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529

U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a

procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

## A.  Ground One

Petitioner's first ground for relief challenges the trial court's decision to impose a five-year mandatory consecutive sentence for each of the repeat violent offender specifications which were attached to the two robbery counts for which Petitioner was convicted.  Under O.R.C. §2929.14(B)(2)(a)(i), a trial judge may impose a consecutive sentence of between one and ten years on a defendant who is convicted of a repeat violent offender specification.  Petitioner argues, as support for his first ground for relief, that the trial court added an element to the indictment on these charges, and that this was improper since "the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted." *Petition*, at 6.  He appears to concede that his appellate counsel did not properly present this argument, but points out that he raised it in both his Rule 26(B) motion and also in his post-conviction petition.

Any error committed by the trial judge with respect to this specification (and it appears, from reading Petitioner's Rule 26(B) motion, that he is arguing that the trial judge added the element of attempting to cause, or causing, serious physical harm)  appears on the face of the record.  Under Ohio law, such errors must be raised, if at all, by way of

-8-

direct appeal.  This claim does not appear in the appellate brief filed by Petitioner's counsel, and, just as significantly, it was not one of the three claims which he presented to the Ohio Supreme Court on his direct appeal.  Although the memorandum in support of jurisdiction (*Response,* Ex. 22) does raise an issue about the repeat violent offender statute, the question presented was whether the statute was void for vagueness because Petitioner was not, at the time of his prior conviction, informed how that conviction could be used as part of a repeat violent offender specification.  Neither the wording of the indictment nor the wording of the jury instructions on the specification is mentioned.  Consequently, this ground for relief was procedurally defaulted because it was not properly raised on direct appeal.  *See State v. Cole,* 2 Ohio St.3d 112 (1982).

Petitioner has not directly argued that cause exists to excuse his procedural default of this claim.  He did, however, include the claim in his Rule 26(B) motion, which is the proper way, in Ohio, to raise allegations of ineffective assistance of appellate counsel. However, that motion was denied because it was filed too late.  That is itself a procedural default.  *See McClain v. Kelly*, 631 Fed.Appx. 422, 437 (6th Cir. Dec. 15, 2015)(petitioner "procedurally defaulted his ineffective-assistance-of-appellate-counsel claim and the underlying substantive claims by not timely filing a Rule 26(B) application"). Consequently, were Petitioner to argue that the default of this ground for relief was the fault of his appellate attorney, because he did not properly present that claim to the Ohio courts, it cannot serve as cause to excuse his default.  He has also not presented any valid claim that he is actually innocent, or supported such a claim with the type of evidence

which might otherwise excuse a procedural default.  *See Schlup v. Delo*, 513 U.S. 298 (1995).

The Court therefore cannot reach the merits of Petitioner 's first ground for relief.

### B.  Ground Two

In his second ground for relief, Petitioner contends that his trial counsel was ineffective for failing to ask for a jury instruction on the lesser included offense of theft by threat.  He argues that counsel presented evidence which would have allowed the jury to reach such a verdict but then failed to ask the trial court to instruct the jury about it.  He acknowledges that this claim (which, like his first ground for relief, appears on the face of the record) was not raised on direct appeal, but explains that this omission occurred due to ineffective assistance of appellate counsel and that he raised such a claim in his Rule 26(B) motion.

Again, the problem with this argument is the untimeliness of the Rule 26(B) motion. The analysis here is the same as with ground one; even if Petitioner's appellate attorney should have argued that trial counsel was ineffective for failing to ask  for a lesser-included-offense instruction  - and there are many strategic reasons why an attorney does not do so, *see, e.g., Harrop v. Sheets*, 430 Fed.Appx. 500 (6th Cir. July 20, 2011) - Petitioner did not timely raise the claim of ineffective assistance of appellate counsel because he filed his Rule 26(B) motion late, and did not demonstrate good cause for doing so.  Consequently, ground two has also been procedurally defaulted.  *See McClain v. Kelly, supra.*

### C.  Ground Three

As his third ground for relief, Petitioner asserts that the trial court should have instructed the jury that the evidence about the force used to commit the two robberies - the presentation of a note to the teller which, in each case, stated that the teller was to comply with the demand within thirty seconds or "die" - was insufficient to support a charge of robbery.  Like grounds one and two, this claim appears on the face of the record and was not included among the claims raised on direct appeal.  It is also difficult to see how this is a federal constitutional claim, unless it is an indirect attack on the sufficiency of the evidence (and not a particularly viable one at that, since Ohio does not require that a weapon be used, or even that the presence of a weapon be explicitly implied, in order for someone to be convicted of bank robbery, *see, e.g., State v. Willis*, 1994 WL 704388 (Franklin Co. App. Dec. 15, 1994)), but that is beside the point.  This claim, too, has been procedurally defaulted.

## IV.  Ground Four

Unlike the first three grounds, Respondent does not argue that Petitioner's fourth ground for relief was procedurally defaulted.  That ground attacks the trial court's admission of hearsay testimony.  It is helpful to recite the state court of appeals' findings on this claim before discussing it in detail.  The claim relates to the trial court's admission of the out-of-court statement of one of the victim tellers, Abby Sanker, that the person who committed the November 11, 2009 robbery looked like the picture of the person who had robbed the bank six days earlier. In overruling Petitioner's assignment of error on this point, the court said, *see State v. Sullivan*, 2011 WL 6202357 at *12-14:

-11-

Appellant contends in his second assignment of error that the trial court erred in admitting hearsay testimony from Hanna and Vondran regarding the November 11, 2009 robbery. "Hearsay" is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Although Evid.R. 802 provides that hearsay generally is not admissible, Evid.R. 803(2) sets forth an exception for excited utterances, or "statement[s] relating to a startling event or condition made while the declarant [is] under the stress of excitement caused by the event or condition."

The admission or exclusion of evidence, including the determination of whether a hearsay declaration should be admitted as an excited utterance, rests within the sound discretion of the trial court. *State v. Holloway*, 10th Dist. No. 02AP–984, 2003–Ohio–3298, ¶ 14, 24, citing *State v. Sage* (1987), 31 Ohio St.3d 173, 180, and *Roach v. Roach* (1992), 79 Ohio App.3d 194, 205. Absent an abuse of that discretion and a showing of material prejudice, an appellate court will not overturn a trial court's ruling.

In *State v. Taylor* (1993), 66 Ohio St.3d 295, the Supreme Court of Ohio set forth a four-part test to determine the admissibility of an excited utterance:

(a) [T]hat there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.

(Emphasis sic.) *Id*. at 300–01, quoting *Potter v. Baker* (1955), 162 Ohio St. 488, paragraph two of the syllabus.

In general, cases that invoke the excited utterance exception to the hearsay rule involve assaults, automobile accidents, and similarly impactful events, such as witnessing a robbery. *State v. Ducey*, 10th Dist. No. 03AP–944, 2004–Ohio–3833, citing *Osborne v. Kroger Co.*, 10th Dist. No. 02AP–1422, 2003–Ohio–4368, ¶ 43, citing *State v. Moorman* (1982), 7 Ohio App.3d 251.

Hanna testified that, just before the robbery on November 11, 2009, she told Sanker that the bank had been robbed the previous Friday and showed her a photograph of appellant. Moments later, Hanna observed appellant enter the bank and approach Sanker's teller station; she then saw Sanker "making a scooping motion, taking money out of her drawer and passing it over the teller line." (Tr. 223.) Hanna testified that, after appellant left the bank, Sanker "was very shaken up, shaking, [and] crying." (Tr. 226 .) Following this testimony, the prosecutor asked Hanna if Sanker told her she had been robbed. Defense counsel objected on hearsay grounds. The prosecutor argued that Sanker's statement constituted an excited utterance, and the trial court overruled the objection. (Tr. 228.) The prosecutor reasserted the question, and Hanna responded, "I believe so, but I can't remember fully." (Tr. 228.)

Vondran testified that, on November 11, 2009, she observed Sanker looking "distraught" and handing money to appellant across the teller counter. (Tr. 319.) Vondran spoke to Sanker shortly after appellant left the bank. According to Vondran, Sanker was "very, very shaken up." (Tr. 320.) Following this testimony, the prosecutor asked Vondran if she asked Sanker what had happened, and Vondran replied, "Umhmm." (Tr. 320.) When the prosecutor asked Vondran what Sanker told her, defense counsel objected on hearsay grounds. The prosecutor argued that Sanker was unavailable to testify and that her statement constituted an excited utterance. Following a brief discussion, the trial court overruled the objection. Vondran thereafter testified that Sanker told her she had just been robbed and that the robber looked like the picture of the person who had robbed the bank on November 6, 2009.

After a thorough review of the record, we conclude that all four prongs of the *Taylor* test have been met, rendering proper the trial court's admission of Sanker's out-of-court statements. Under the first prong, Sanker's reflective faculties were arguably stilled by the fact that she had just been robbed by a man who produced a note threatening to kill her if she did not comply with his demands within 30 seconds. Indeed, according to Hanna and Vondran, Sanker was visibly shaken and crying following the robbery.

Regarding the second prong, Sanker's statements were made before her nervous excitement lost domination over her reflective capabilities. With excited utterances, "[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought. * * * Therefore, the passage of time between the statement and the event is relevant but not dispositive of the question." (Emphasis sic.) *Taylor* at 303. " 'Relevant factors in ascertaining whether the declarant was in a sufficient state of excitement or stress include outward indicia of emotional state such as tone of voice, accompanying actions, and general demeanor.' " *Ducey* at ¶ 22, citing *Osborne* at ¶ 46. Contrary to appellant's assertion, the testimony of both Hanna and Vondran suggests that very little time transpired between the robbery and Sanker's statements. Further, both testified that Sanker was visibly shaken by the event; Hanna noted that Sanker was crying.

Lastly, under the third and fourth prongs, Sanker's out-of-court statements related to the incident, and Sanker personally observed the matters about which she spoke. Sanker's statements, which Hanna and Vondran communicated to the court at trial, were limited in scope to what happened to Sanker during the robbery and the identification of appellant as the robber.

The four prongs of the *Taylor* test having been met, we conclude that the trial court did not abuse its discretion in admitting the hearsay testimony of Hanna and Vondran under the excited utterance exception to the hearsay rule. The second assignment of error is overruled.

Respondent argues that to the extent that Petitioner is challenging the trial court's evidentiary ruling on federal constitutional grounds, he must show that the ruling resulted in a denial of a fundamentally fair trial. Alternatively, if he is asserting an independent violation of the Confrontation Clause, the admission of an excited utterance does not violate that constitutional provision. Either way, Respondent argues, this claim lacks merit. As to the merits of this, or any, constitutional claim raised in a habeas corpus petition, this

Court must apply the following standard of review.

## A.  Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, --- U.S. ----, ----, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett,* 559 U.S. 766, 773 (2010) ("AEDPA... imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).  The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(e)(1).

Habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d)(1); *Coley v. Bagley,* 706 F.3d 741,

748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); *see also* 28 U.S.C.

§2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable

determination of the facts in light of the evidence presented in the State court proceeding").

The United States Court of Appeals for the Sixth Circuit explained these standards as

follows:

> A state court's decision is "contrary to" Supreme Court precedent if
> (1) "the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law[,]" or (2) "the state court confronts facts
> that are materially indistinguishable from a relevant Supreme Court
> precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362,
> 405 (2000). A state court's decision is an "unreasonable application" under 28
> U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the
> Supreme] Court's cases but unreasonably applies it to the facts of the
> particular ...case" or either unreasonably extends or unreasonably refuses to
> extend a legal principle from Supreme Court precedent to a new context. *Id.*
> at 407....

*Coley, supra*, at 748-49. The burden of satisfying the standards set forth in § 2254 rests

with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court

precedent] unreasonable,...[t]he state court's application must have been objectively

unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21,

(2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and

*Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). *See also Harrington v. Richter*, 131 S.Ct. at 786 ("A

state court's determination that a claim lacks merit precludes federal habeas relief so long

as 'fairminded jurists could disagree' on the correctness of the state court's decision.")

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of

"unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. " '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)). *See also Nicely v. Mills*, 521 Fed.Appx. 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Moreover, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a federal habeas court must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Pinholster, supra* at 1398.

### B. Discussion

It is somewhat surprising that Respondent has chosen to address this claim on its merits. It was not argued in Petitioner's appellate brief (*Return*, Ex. 17) as a federal constitutional claim, nor was it one of the three assignments of error presented in his appeal to the Ohio Supreme Court. Any federal aspect of this claim was never fairly presented to the Ohio courts and is now defaulted. That is a sufficient reason for denying Petitioner relief on this claim. It also explains why the state court of appeals did not discuss the United States Constitution - neither the Due Process clause nor the

Confrontation clause - in its decision.

Turning to the merits, however, the state courts did not unreasonably deny Petitioner relief on this claim or even  err in their decision not to find a federal constitutional violation.  Respondent is correct that, if the claim is based in the Due Process clause, Petitioner must have demonstrated that his trial was fundamentally unfair. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).  No such showing has been made here.  There were multiple eyewitness identifications of Petitioner by victims of both robberies.  The cumulative effect of this statement - which the jury, having the same picture to consider as Ms. Sanker, could evaluate for themselves - could not have affected the fundamental fairness of the proceedings.

Also, as Respondent correctly points out, the admission of a true "excited utterance" - especially one made at the time and in a way not intended to be testimonial - does not violate the Confrontation Clause. *See, e.g., United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007); *see also Williams v. Warden, Chillicothe Correctional Inst.*, 2015 WL 3466120, *9 (S.D. Ohio June 1, 2015), *adopted and affirmed* 2015 WL 4934188 (S.D. Ohio Aug. 18, 2015).  When the statement in question was made, the teller was not being interrogated by the police, nor had any official investigation into the robbery begun.  It is not likely that she intended the statement to be used against Petitioner in a criminal proceeding.  It was simply a statement

made under the stress of the robbery.  There was no Confrontation Clause violation here -

or if there was, it was certainly harmless.  The Court therefore finds no merit in Petitioner's

fourth ground for relief.

### V.  Recommended Disposition

For the reasons set out above, the Court recommends that the petition for a writ of

habeas corpus be **DENIED** and that this case be **DISMISSED**.

### VI.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may,

within fourteen (14) days of the date of this Report, file and serve on all parties written

objections to those specific proposed findings or recommendations to which objection is

made, together with supporting authority for the objection(s).  A judge of this Court shall

make a de novo determination of those portions  of the report or specified proposed

findings or recommendations to which objection is made.  Upon proper objections, a judge

of this Court may accept, reject, or modify, in whole or in part, the findings or

recommendations made herein, may receive further evidence or may recommit this matter

to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to have the district judge review the

Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal

the decision of the District Court adopting the Report and Recommendation.  *See Thomas*

*v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge